1
2

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

3  LEONARDO ALVARADO-SANCHEZ,

4        Plaintiff,

                                          Civil No. 07-1272 (JAF)

5        v.

6  FIRST HOSPITAL CORPORATION,
7  et al.,
8
9        Defendants.

10                    **OPINION AND ORDER**

11       Plaintiff, minor Leonardo Alvarado-Sánchez, represented by his

12  mother, Leida Sánchez-Ortiz, brings this action under 42 U.S.C.

13  § 1983 (2007) and 31 L.P.R.A. § 5141 (2005) ("Article 1802") against

14  Defendants, First Hospital Corporation; Alternative Behavioral

15  Services; First Hospital Panamericano; First Corrections Puerto Rico;

16  Administration of Juvenile Institutions of the Commonwealth of Puerto

17  Rico ("AJI"); José Negrón-Fernández, Administrator of Juvenile

18  Institutions, and his conjugal partnership with Jane Doe; Rafael O.

19  Malavé, sub-director of Juvenile Institutions, and his conjugal

20  partnership with Jane Roe; and various other unknown defendants.

21  Docket Document No. 1.  Plaintiff alleges violations of his Fifth,

22  Eighth, and Fourteenth Amendment rights, resulting from Defendants'

23  failure to prevent repeated acts of physical aggression and attempted

24  rape against him during his court-ordered stay at the Puerto Rico

Civil No. 07-1272 (JAF)                                           -2-

1   Adolescent Training School ("PRATS"), located in Río Grande, Puerto

2   Rico. Id. Defendants Malavé, AJI, Negrón, and the conjugal

3   partnership of Negrón and Jane Doe, move to dismiss the case pursuant

4   to Federal Rule of Civil Procedure 12(b)(6). Docket Document Nos. 15,

5   32. Plaintiff opposes. Docket Document No. 20.

6                                   **I.**

7                    **Factual and Procedural Synopsis**

8       We derive the following factual summary from Plaintiff's

9   complaint. Docket Document No. 1. As we must, we assume that all of

10  Plaintiff's allegations are true and make all reasonable inferences

11  in his favor. Alternative Energy, Inc. v. St. Paul Fire & Marine

12  Ins. Co., 267 F.3d 30, 36 (1st Cir. 2001).

13      In 2002, a court order placed Plaintiff, a minor who suffers

14  from schizophrenia, under the custody and supervision of PRATS in Río

15  Grande, Puerto Rico. From the time Plaintiff entered PRATS until

16  2004, other PRATS residents frequently assaulted him and threatened

17  to rape him.

18      On one occasion, four or five residents subdued Plaintiff using

19  physical force and weapons, surrounded him, and attempted to rape

20  him. When Plaintiff resisted, the other residents attacked him.

21      Another time, a resident assaulted Plaintiff, provoking him into

22  defending himself. The incident resulted in Plaintiff's confinement.

23  PRATS employees tied up Plaintiff and placed him in confinement with

24  a resident who was not similarly restrained. The other resident beat

Civil No. 07-1272 (JAF)                                    -3-

1    Plaintiff, urinated on him, and threw hot coffee on him. PRATS

2    employees supplied the resident with the coffee.  Other employees did

3    nothing to stop the assault on Plaintiff.

4       Once, while other residents assaulted Plaintiff, Gerardo

5    Clemente, a PRATS employee, shouted out "kill him."

6       Additionally, Plaintiff did not receive his medication

7    consistently; was treated with the wrong medication; did not get a

8    proper education; received inadequate nutrition; feared for his life;

9    and was assaulted by PRATS employees with a water pressure hose when

10   he attempted to defend himself.

11                                  **II.**

12          **Motion to Dismiss Standard Under Rule 12(b)(6)**

13      Pursuant to Federal Rule of Civil Procedure 12(b)(6), a

14   defendant may move to dismiss an action against him, based solely on

15   the pleadings, for the plaintiff's "failure to state a claim upon

16   which relief can be granted." FED. R. CIV. P. 12(b)(6).  In assessing

17   a motion to dismiss, "[w]e begin by accepting all well-pleaded facts

18   as true, and we draw all reasonable inferences in favor of the

19   [nonmovant]." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962,

20   971 (1st Cir. 1993); see also Coyne v. City of Somerville, 972 F.2d

21   440, 442-43 (1st Cir. 1992).  We then determine whether the plaintiff

22   has stated a claim under which relief can be granted.

23      A plaintiff must set forth "a short and plain statement of the

24   claim showing that the pleader is entitled to relief," Fed. R. Civ.

Civil No. 07-1272 (JAF)                                                    -4-

1    P. 8(a)(2), and need only give the respondent fair notice of the

2    nature of the claim and petitioner's basis for it.  Swierkiewicz v.

3    Sorema N.A., 534 U.S. 506, 512-15 (2002).  To survive a motion to

4    dismiss, a plaintiff must allege facts that demonstrate "a plausible

5    entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490

6    F.3d 92, 95 (1st Cir. 2007) (citing Bell Atl. Corp. v. Twombly, __

7    U.S. __, 127 S.Ct. 1955, 1967 (2007)).

8                                    III.

9                                  **Analysis**

10      Defendants move to dismiss on the grounds that (1) the Eleventh

11   Amendment bars suits against AJI and its employees in their official

12   capacity; (2) Plaintiff has failed to state a claim under 42 U.S.C.

13   § 1983; (3) there is no supervisory liability for Defendants Malavé

14   and Negrón under § 1983; and (4) Defendants Malavé and Negrón are

15   entitled to qualified immunity.  Docket Document No. 15.  We examine

16   each of these arguments in turn.

17   **A.   Eleventh Amendment**

18      Defendants argue that Eleventh Amendment sovereign immunity bars

19   Plaintiff's claims against Defendant AJI and its employees, Malavé

20   and Negrón, in their official capacities.  Docket Document No. 15.

21      The Eleventh Amendment states that the "[j]udicial power of the

22   United States shall not be construed to extend to any suit . . .

23   commenced or prosecuted against one of the . . . States by citizens

24   of another State."  U.S. Const., amend. XI; see also Edelman v.

Civil No. 07-1272 (JAF)                                               -5-

1   <u>Jordan</u>, 415 U.S. 651, 663 (1974) (stating that "an unconsenting State

2   is immune from federal-court suits brought by its own citizens as

3   well as by citizens of another State").   The main purpose of the

4   Amendment "is to minimize federal courts' involvement in disbursal of

5   state monies."   <u>Gotay Sanchez v. Pereira</u>, 343 F. Supp. 2d 65, 72

6   (D.P.R. 2004).   The Eleventh Amendment, accordingly, also bars suits

7   for monetary relief against state officers in their official

8   capacities, because such awards would be paid from the state

9   treasury.   <u>Ford Motor Co. v. Dep't of the Treasury</u>, 323 U.S. 459, 464

10  (1945).

11       "For Eleventh Amendment purposes, the Commonwealth [of Puerto

12  Rico] is treated as if it were a state; consequently, the Eleventh

13  Amendment bars any suit brought against it."   <u>Id.</u> at 71-72 (citing

14  <u>Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer Auth.</u>, 991 F.2d 935

15  (1st Cir. 1993)); <u>see also</u> <u>Espinal-Dominguez v. Puerto Rico</u>, 352 F.3d

16  490, 493-94 (1st Cir. 2003).   Because "a state only has existence

17  through its instrumentalities that carry out its functions and

18  establish its public policy . . . suits brought against non-

19  autonomous instrumentalities of the state [are] considered suits

20  against the state itself."   <u>Padilla Cintron v. Rossello Gonzalez</u>, 247

21  F. Supp. 2d 48, 57 (D.P.R. 2003).

22       Both parties to this case agree that Defendant AJI is an

23  instrumentality of the Commonwealth.   <u>Docket Document Nos. 12, 15</u>.

24  We, therefore, find that the Eleventh Amendment bars Plaintiff's

Civil No. 07-1272 (JAF)                                          -6-

1    claims against AJI and Malavé and Negrón in their official
2    capacities, and dismiss those claims with prejudice.

3    **B.    Failure to State a Claim Under § 1983**

4        Defendants argue that Plaintiff has failed to state a claim
5    under § 1983.  Docket Document No. 15.

6        Under § 1983, persons acting under color of state law are liable
7    for subjecting any citizen or person within the jurisdiction of the
8    United States to "the deprivation of any rights, privileges or
9    immunities secured by the Constitution."  42 U.S.C. § 1983.

10       Plaintiff alleges violations of his Fifth, Eighth, and
11   Fourteenth Amendment rights.  Docket Document No. 1.  Defendants
12   argue that Plaintiff's allegations do not amount to constitutional
13   violations.  Docket Document No. 15.

14       **1.    Cruel and Unusual Punishment**

15       The Eighth Amendment prohibits the infliction of cruel and
16   unusual punishment upon convicted criminals. U.S. CONST. amend. VIII;
17   Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189,
18   199 (1989) ("The state does not acquire the power to punish with
19   which the Eighth Amendment is concerned until after it has secured a
20   formal adjudication of guilt.") (quoting Ingraham v. Wright, 430 U.S.
21   651, 671-72 n. 40 (1977)).  Because Plaintiff is not a convicted
22   criminal, the Eighth Amendment cannot serve as the basis for his
23   § 1983 claim.

Civil No. 07-1272 (JAF)                                                    -7-

1        **2.  <u>Due Process</u>**

2            Plaintiff alleges violations of his due process rights under the

3    Fifth and Fourteenth Amendments of the Constitution.  <u>Docket Document</u>

4    <u>No. 1</u>. Because the Fifth Amendment applies to the federal government,

5    and Plaintiff's claims are directed at Commonwealth actors, we

6    analyze Plaintiff's due process allegations under the Fourteenth

7    Amendment.  <u>Id.</u>; U.S. Const. amend. V.

8            The Fourteenth Amendment provides that no state shall "deprive

9    any person of life, liberty, or property, without due process of the

10   law." U.S. Const. amend. XIV, § 1.  "To state a claim for a violation

11   of procedural due process, a plaintiff must (1) assert a protected

12   property or liberty interest, and (2) show that state action deprived

13   her of that interest without due process of law." <u>Siaca v. Autoridad</u>

14   <u>de Acueductos y Alcantarillados de P.R.</u>, 160 F. Supp. 2d 188, 202

15   (D.P.R. 2001).  Here, Plaintiff has alleged gross negligence and

16   deliberate indifference, not the deprivation of a protected property

17   or liberty interest.  <u>Docket Document No. 1</u>.  Plaintiff has,

18   therefore, failed to allege a violation of his procedural due process

19   rights.

20           The Fourteenth Amendment, however, also protects substantive due

21   process rights when state actors engage in conscience-shocking

22   behavior.  <u>Mongeau v. City of Marlborough</u>, 492 F.3d 14, 17 (1st Cir.

23   2007).  For liability to attach, an official action must be

24   sufficiently conscience-shocking as to be unjustifiable by any

Civil No. 07-1272 (JAF)                                                   -8-

1    government interest.  County of Sacramento v. Lewis, 523 U.S. 833,

2    850 (1998); Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001).

3         "For involuntarily committed patients, 'a set of unique rules

4    has developed' according to which 'failures to act . . . may comprise

5    a due process or other constitutional violation because the state-

6    imposed circumstance of confinement prevents such individuals from

7    helping themselves.'"  Davis v. Rennie, 264 F.3d 86, 98 (1st Cir.

8    2001) (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir.

9    1999)); see also Youngberg v. Romeo, 457 U.S. 307, 314-25 (finding

10   that Fourteenth Amendment substantive due process requires the state

11   to provide involuntarily committed mental patients with the services

12   necessary to ensure their "reasonable safety").

13        Plaintiff alleges that, during his court-ordered confinement in

14   PRATS, he suffered repeated physical assaults as a direct result of

15   Defendants' deliberate indifference and, in some cases, direction and

16   encouragement. Docket Document No. 1. We find that these allegations,

17   if true, would constitute a violation of Plaintiff's substantive due

18   process rights.  See Rennie, 264 F.3d at 117 (affirming district

19   court finding of a substantive due process violation where defendants

20   observed the use of excessive force against a mental health patient

21   and failed to intervene); Hasenfus, 175 F.3d at 71 (stating that the

22   failure of a mental institution's staff to stop one patient from

23   assaulting another may amount to a substantive due process claim

24   triggering liability under § 1983). We, therefore, find that

25   Plaintiff has successfully stated a § 1983 claim based on alleged

Civil No. 07-1272 (JAF)                                              -9-

1   violations  of  his  Fourteenth  Amendment  substantive  due  process
2   rights.

3   **C.   <u>Supervisory Liability</u>**

4        Defendants argue that § 1983 does not allow for liability based
5   on respondeat superior.  <u>Docket Document No. 15</u>.

6        Under  §  1983,  a  supervisor  is  liable  for  a  deliberately
7   indifferent act or omission when there is an affirmative link between
8   the  act  or  omission  and  the  subordinate's  violation  of  the
9   plaintiff's constitutional rights.  <u>Febus-Rodríguez v. Betancourt-</u>
10  <u>Lebron</u>, 14 F.3d 87, 92 (1st Cir. 1994).

11       Here,  Plaintiff  alleges  that  Negrón  and  Malavé,  the
12  administrator  and  sub-director  of  AJI,  sent  Plaintiff  to  PRATS
13  despite  the  fact  that  they  knew  or  should  have  known  that  PRATS
14  employees  tolerated  and  encouraged  abuses  against  their  residents.
15  <u>Docket Document No. 20</u>.  Plaintiff further alleges that Defendants
16  should  have  been  aware  of  previous  reports  and  litigation  regarding
17  this abuse.  <u>Id.</u>  Because a supervisor may be liable under § 1983 for
18  deliberate  indifference,  these  allegations  suffice  to  survive  a
19  motion to dismiss.  <u>Febus-Rodríguez</u>, 14 F.3d at 92; <u>Maldonado-Denis</u>
20  <u>v. Castillo-Rodríguez</u>, 23 F.3d 576, 582 (1st Cir. 1994).

21  **D.   <u>Qualified Immunity</u>**

22       Defendants  assert  that  Malavé  and  Negrón  are  entitled  to
23  qualified immunity.  <u>Docket Document No. 15</u>.

24       Qualified immunity protects state officials from the burden of
25  standing  trial  or  facing  other  onerous  aspects  of  litigation.

Civil No. 07-1272 (JAF)                                               -10-

1    Saucier v. Katz, 533 U.S. 194, 200 (2001).   "The reach of this

2    doctrine is long, but not infinite."  Pagan v. Calderon, 448 F.3d 16,

3    31 (1st Cir. 2006).   The test to determine whether Defendants are

4    entitled to qualified immunity has three parts: (1) "whether the

5    plaintiff's allegations, if true, establish a constitutional

6    violation"; (2) "whether the constitutional right at issue was

7    clearly established at the time of the putative violation"; and

8    (3) "whether a reasonable officer, situated similarly to the

9    defendant, would have understood the challenged act or omission to

10   contravene the discerned constitutional right."  Id.  Qualified

11   immunity, thus, "safeguards even unconstitutional conduct if a

12   reasonable officer at the time and under the circumstances

13   surrounding the action could have viewed it as lawful."  Jordan v.

14   Carter, 428 F.3d 67, 71 (1st Cir. 2005).

15       As previously discussed, under substantive due process, mental

16   health institutions holding involuntarily-committed patients are

17   responsible for the inmates' reasonable safety.  Youngsberg, 47 U.S.

18   at 314-25; Rennie, 264 F.3d at 98.  This constitutional right was

19   clearly established when the incidents at issue in this case took

20   place.  We find that a reasonable administrator or sub-director of

21   juvenile administrations would have understood that failing to

22   address previous allegations of abuse and confining Plaintiff without

23   taking measures to ensure his safety would contravene Plaintiff's

24   constitutional rights.  We, therefore, find that Defendants Malavé

25   and Negrón are not entitled to qualified immunity.

Civil No. 07-1272 (JAF)                                                -11-

1                                    **IV.**

2                               **Conclusion**

3        For the aforementioned reasons, we hereby **DENY** Defendants'

4   motion to dismiss pursuant to Federal Rule of Civil Procedure

5   12(b)(6), Docket Document No. 15.  We **DISMISS** Plaintiff's § 1983

6   claims against AJI and Defendants Malavé and Negrón in their official

7   capacities **WITH PREJUDICE.** Plaintiff's Article 1802 and § 1983 claims

8   against Malavé and Negrón in their personal capacities remain, as

9   well as the claims against the Defendants which have not joined this

10  motion to dismiss.

11        **IT IS SO ORDERED.**

12        San Juan, Puerto Rico, this 11th day of January, 2008.

13                                      s/José Antonio Fusté
14                                      JOSE ANTONIO FUSTE
15                                      Chief U. S. District Judge